Arthur W. Einstein and Jean M. Einstein, et al. [1] v. Commissioner. Einstein v. Commissioner
Docket Nos. 35760, 35768, 35781.
United States Tax Court
T.C. Memo 1955-6; 1955 Tax Ct. Memo LEXIS 333; 14 T.C.M. (CCH) 19; T.C.M. (RIA) 55006; January 18, 1955
*333 Employees' trust: Distribution of annuity contract in year not exempt under section 165(a): Regulations 111 - section 29.165-6. - The fair market value of an annuity contract, or contracts, being at least the amount of each petitioner's retirement credit in an employees' trust which was used in the payment of the advance premium of each contract, which annuity contract was delivered to and retained by each petitioner, is taxable income to each petitioner under section 22(a). Regulations 111, section 29.165-6 does not relieve the distribution from tax. Percy S. Lyon and Elizabeth J. Lyon, 23 T.C. 187; followed. Daniel W. Loeser, Esq., and Philip J. Wolf, Esq., for the petitioners. James A. Scott, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined deficiencies in income tax for the year 1948 as follows: Docket
Number
Petitioners
Deficiencies
35760
A. & J. Einstein
$2,185.04
35768
R. & M. Brown
2,708.84
35781
G. & N. Anderson
2,643.00
The question to be decided is whether the respondent properly included in petitioners' gross income for 1948, under section 22(a), 1939 Code, the amounts of retirement credits standing in their names in a profit-sharing pension trust which were used in the payment of premiums for annuity contracts which were distributed to petitioners in 1948. Several other adjustments made *335 by the Commissioner are not contested by the petitioners. Findings of Fact The facts which have been stipulated are found as facts. The stipulation and all of the attached exhibits are incorporated herein by this reference. The material facts are as follows: Arthur W. and Jean M. Einstein reside at State College, Pennsylvania. Robert M. and Margaret L. Brown, and G. Glen and Naomi D. Anderson reside at Youngstown, Ohio. Joint returns for 1948, on the cash basis, were filed by petitioners with the collector for the eighteenth district of Ohio. The wives are involved in these proceedings only because joint returns were filed. Arthur W. Einstein, Robert M. Brown, and G. Glen Anderson will be referred to hereinafter as the petitioners. For many years prior to 1948, the Strouss-Hirshberg Company, an Ohio corporation, hereinafter referred to as the Company conducted a department store business in Youngstown, Ohio. Einstein, born February 27, 1896, was continuously employed by the Company from October 1933, until May 10, 1948. Brown, born September 29, 1895, was continuously employed by the Company from June 1913, until May 10, 1948. Anderson, born June 26, 1891, was continuously *336 employed by the Company from October 1919, until May 10, 1948. Each of the petitioners occupied a position of responsibility with the Company in 1942 and until May 10, 1948. On May 13, 1948, the Company was dissolved under conditions set forth hereafter. On January 30, 1942, the Company entered into a trust agreement with The Dollar Savings and Trust Company of Youngstown, Ohio, as trustee. A trust was created to establish a "bonus and profit-sharing pension plan", for certain of the Company's employees, including the petitioners. Two irrevocable contributions of $24,000, each, were made by the Company to the trust on January 30, 1942, and January 28, 1943. In each instance, $24,000 was credited in varying amounts for the benefit of eight named employees, including the petitioners. The amounts credited to each of the petitioners were as follows: 1/30/42
1/28/43
Total
Arthur W. Einstein
$2,222.20
$2,222.20
$4,444.40
Robert M. Brown
3,111.18
3,111.18
6,222.36
G. Glen Anderson
3,555.52
3,555.52
7,111.04
No other contributions were made thereafter by the Company to the trust, and no contributions were ever made to the trust by any of the petitioners. *337 The trust agreement provided that each contribution of the Company was irrevocable when made. Each employee-beneficiary, hereinafter called a designee, became eligible to receive a distribution of his benefits, or retirement credit, upon retirement, or upon termination of employment by the Company for any reason, provided he was 60 years of age, or had been employed by the Company for at least 25 years and was 50 years of age. A designee's retirement credit equalled the sum of the contributions to his credit plus his pro rata share of the earnings of the trust fund at the date of his retirement. The trust instrument provided that when a designee became eligible to receive a distribution of his benefits, the trustee would make monthly payments to the designee in an amount equal to 1/150th of the designee's retirement credit until the retirement credit was exhausted by such distributions. The instrument also contained a provision permitting the trust funds to be invested "in purchasing 'retirement annuities' or contracts for periodic payment of money for the benefit of one or all of the Designees * * *." The petitioners' beneficial interests in the Company's contributions to the *338 trust were forfeitable or contingent when the contributions were made in 1942 and 1943, inasmuch as none of the petitioners was then 60 years of age, or had reached the age of 50 and had been in the Company's employ for 25 years. On May 10, 1948, the Company transferred all its business and assets to The May Department Stores Company, a New York corporation, in exchange solely for shares of stock of The May Department Stores Company, which shares were thereafter distributed to the shareholders of the Company in cancellation of their shares in the Company. The Company ceased doing business, and the business has since been operated by The May Department Stores Company under the name of The Strouss-Hirshberg Company. The petitioners became employees of The May Department Stores Company on May 10, 1948. On May 13, 1948, the Company, having no business and no assets, was dissolved. No arrangement was made for continuing the trust after the dissolution of the Company. The trust agreement provided that in the event of the dissolution of the Company, without provision for continuing the trust, all designees shall thereupon be deemed retired and the trustee shall make distributions thereafter *339 upon such basis. At the time of the dissolution of the Company, the petitioners' retirement credits under the trust agreement were as follows: Arthur W. Einstein
$5,005.89
Robert M. Brown
7,008.23
G. Glen Anderson
8,009.40
The trustee did not make any monthly payments to any of the petitioners after the dissolution of the Company. In 1948, after the dissolution of the Company, the trustee used the total amount credited to each of the petitioners, plus additional sums which are not involved here and the source of which is unexplained, as advance premiums to purchase an annuity contract for each. Two contracts were purchased for Anderson. The total amounts of the advance premiums paid for the annuity contracts in 1948 were as follows: Advance
Annuitant
premiums paid
Arthur W. Einstein
$30,114.97
Robert M. Brown
29,319.04
G. Glen Anderson
14,855.10
G. Glen Anderson
15,986.40
All of the annuity contracts were issued and were delivered to the respective petitioners during 1948. Each of the petitioners retained his annuity contract throughout 1948, and each was entitled to receive in later years annuity payments under the annuity contracts. *340 Each of the annuity contracts contained provisions, inter alia, granting rights to the annuitant to change the beneficiary, to assign or release the contract, to elect one of several optional methods of settlement, to elect a nonforfeiture option, to secure a loan, and to obtain a so-called "Net Cash Value" or "Cash Surrender Value". Each contract contained a provision that the insurance company may "defer the payment of any cash [surrender] value for a [the] period permitted by law but not exceeding six months." In the year 1948 when the annuity policies were issued and delivered to the respective petitioners, each petitioner-annuitant became the owner thereof and had all rights incident to unfettered ownership of the contract. The Company kept its books and filed its returns on the basis of a fiscal year beginning on February first and ending on January thirty-first; the trust kept its books on the same fiscal year basis. The profit-sharing trust did not qualify as an exempt trust under section 165 of the Internal Revenue Code, as amended by section 162(a) of the Revenue Act of 1942, and no modifications were made in the trust agreement to so qualify *341 the trust. The trust was nonexempt for the taxable year of the trust ending in 1948, in which year the termination distributions of the annuity contracts were made to the petitioners. None of the petitioners included in income in his joint return for 1948, the amount of the total retirement credit standing in his name in the accounts of the trust, which amount was applied by the trustee in 1948 in payment of the advance premium of an annuity contract. None of the petitioners reported in his joint return for 1948 any amount to represent his receipt of an annuity contract. Opinion The Commissioner determined that each petitioner realized taxable income in 1948, under section 22(a) of the 1939 Code, upon the delivery to him of an annuity contract, and that the amount of the income so realized was the total amount of the retirement credit standing on the books of the trustee in the name of each petitioner, which amount was used in partial payment of the advance premium of each annuity contract. As is shown in the Findings of Fact, the trust created in 1942 by The Strouss-Hirshberg Company for some of its employees was terminated in 1948 at about the time the Company was dissolved *342 pursuant to a reorganization, and the trustee then used the sums standing credited to the petitioners under the trust in payment for advance premiums of annuity contracts which were forthwith delivered to the petitioners and became theirs absolutely. The respondent takes the position that the trust was exempt during its fiscal years ending in 1941 and 1942 under the then provisions of section 165(a) of the 1939 Code as they applied to the fiscal years of the Company and the trust (which apparently were the same). The parties are agreed that the trust, in 1948, was not exempt because it did not satisfy the new requirements of section 165(a), as amended by section 162(a) of the Revenue Act of 1942. The petitioners make an argument based upon section 29.165-6 of Regulations 111 which provides that the cash surrender value of an annuity contract purchased by a trust exempt under section 165(a) will not be considered income to the employee in the year it is distributed to him if distributed "in a year for which the trust is exempt." The petitioners contend that no "taxable event" happened in 1948 which brought about their realization of income in that year. They argue that their employer's *343 contributions were not "actually received or made available" to them in 1948, merely because annuity contracts were purchased and delivered to them in 1948. In substance, petitioners contend that the realization of taxable income is deferred until they either receive payments under an annuity contract, or obtain the cash surrender value thereof. The respondent contends that the "value" of each annuity contract received by each petitioner in 1948 is income to him under section 22(a), unless some other section of the Internal Revenue Code limits or defers its taxability. There is no issue before us about the "value" in 1948 of each annuity contract for the purpose of the issue before us. (Respondent has taken the total amount of each petitioner's retirement credit under the trust as being the equivalent of "value", under the particular circumstance present here, namely, that the amount of each advance premium which was paid for each contract was greatly in excess of the retirement credit of each petitioner.) We had before us in Percy S. Lyon and Elizabeth J. Lyon, 23 T.C. 187, October 29, 1954) essentially the same question. In that case the parties made the same contentions. *344 We rejected the argument of the petitioners in the Lyon case, and concluded that the Commissioner's argument was sound. We stated as follows: "* * * There is no occasion to pass upon the validity of the regulation because obviously it refers only to trusts exempt under the law applicable to the year in which the distribution is made, and this was not such a trust. No other provision of law or of the regulations has been cited or has come to the attention of the Court which would in any way affect the taxability of this distribution under section 22(a)." The foregoing disposes of the question in these proceedings. The respondent's determinations giving rise to the issue presented are sustained. Decisions will be entered for the respondent. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Robert M. Brown and Margaret L. Brown, Docket No. 35768; and G. Glen Anderson and Naomi D.Anderson, Docket No. 35781. ↩